UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.  SCOTTSDALE INSURANCE COMPANY )<br>)<br>    **Plaintiff,** )<br>)<br>Vs. )<br>)<br>2. WILBANKS SECURITIES, INC. and )<br>3. ROBERT M. WINN, TRUSTEE OF THE )<br>MARTHA ANN WINN IRREVOCABLE )<br>TRUST DATED JULY 19, 1994, )<br>)<br>    **Defendants.** ) | Case No. CIV-11-1474-C |

## COMPLAINT

Plaintiff, Scottsdale Insurance Company ("Scottsdale"), by and through its undersigned counsel, and pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, hereby seeks a declaratory judgment against Defendants, Wilbanks Securities, Inc. ("Wilbanks") and Robert M. Winn, Trustee of the Martha Ann Winn Irrevocable Trust dated July 19, 1994 ("Winn"), for the purpose of determining a question of actual, immediate controversy between the parties.

## PARTIES

1. At all pertinent times, Scottsdale was, and still is, a corporation organized and existing under the laws of the State of Arizona with its principal place of business in Maricopa County, Arizona.

2. At all pertinent times, Wilbanks was, and still is, a corporation organized and existing under the laws of Oklahoma with its principal place of business in Oklahoma City, Oklahoma.

3. At all pertinent times, Winn was, and still is, a natural person and resident of Tulsa, Oklahoma.

## NATURE OF THE CLAIM

4. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Rules of Civil Procedure to determine an actual case and controversy between Scottsdale and the Defendants regarding the parties' respective rights and obligations under Policy No. BFS0001723 (the "2010 Policy") and Policy No. BFS0001843 (the "2011 Policy"), which were issued to Wilbanks for the period March 9, 2010 to March 9, 2011 and March 9, 2011 to March 9, 2012, respectively.

5. Scottsdale seeks a judgment declaring that it has no duty to defend or indemnify Wilbanks in connection with a lawsuit filed in the District Court of Tulsa County styled *Robert M. Winn, Trustee of the Martha Ann Winn Irrevocable Trust dated July 19, 1994 v. John Hancock Life Insurance Company (USA) and Wilbanks Securities, Inc.,* Case No. CJ-2011-02603 (the "Underlying Lawsuit").[1]

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees and costs.

7. Venue is proper in the United States District Court for the Northern District of Oklahoma pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims asserted below occurred within the jurisdictional boundaries of this Court.

---

[1] *See*, a true and correct copy of the *Winn* Petition which is attached hereto as Exhibit "1."

## **FACTUAL BACKGROUND**

8. On May 6, 2011, Winn filed suit against Wilbanks (among others) in its capacity as a broker/dealer of a policy of life insurance issued through John Hancock Life Insurance Company (the "Hancock policy") on Martha Winn in the amount of $334,000.[2]

9. Winn claims that the Hancock policy lapsed for non-payment of premium on May 27, 2009.[3]

10. Winn claims that Wilbanks failed to contact the Winns to notify them of the pending lapse of the Hancock policy. Winn further asserts that Wilbanks could have recommended or caused to have the premium payment made from other accounts held by Wilbanks.[4]

11. Approximately a year before the Underlying Lawsuit was filed, Winn contacted Wilbanks by letter dated May 17, 2010, wherein he addressed the termination of the Hancock life insurance policy (among other things).[5]

12. Sometime in July 2010, Winn filed a Complaint against Wilbanks with the Oklahoma Department of Securities. By letter dated August 10, 2010, Wilbanks responded to this complaint.[6] On August 16, 2010, Wilbanks sent a similar letter regarding Winn's claims to the Oklahoma Department of Insurance.[7]

---

[2] *See,* Exhibit 1, generally.
[3] *See,* Exhibit 1 at paragraph ¶ 8.
[4] *See,* Exhibit 1 at paragraph ¶ 19-22.
[5] *See,* a true and correct copy of Winn's May 17, 2010 letter to Wilbanks, attached hereto as Exhibit "2."
[6] *See,* a true and correct copy of Wilbanks' August 10, 2010 letter to the Oklahoma Department of Securities, attached hereto as Exhibit "3."
[7] *See,* a true and correct copy of Wilbanks' August 16, 2010 letter to the Oklahoma Department of Insurance, attached hereto as Exhibit "4."

13. On September 17, 2010, Winn issued a letter to the Oklahoma Department of Insurance (described as a "rebuttal letter"), wherein he generally asserted the claims forming the basis of the Underlying Lawsuit.[8]

14. On October 19, 2010, Wilbanks issued another letter to the Oklahoma Department of Insurance regarding Winn's claims.[9]

15. Scottsdale's first notice of the claims asserted by Winn against Wilbanks was via a May 27, 2011 e-mail from Wilbanks advising that Winn had filed suit.

16. Scottsdale has agreed to defend Wilbanks in connection with the *Winn* Lawsuit subject to a full reservation of rights.

## THE POLICIES

17. The Policies provide Financial Services Professional Liability Insurance coverage to Wilbanks. The 2010 Policy expired on March 9, 2011, which was before Scottsdale was placed on notice of the claims being asserted by Winn. The 2011 Policy incepted March 9, 2011, which was approximately two months prior to the *Winn* lawsuit being filed.[10]

18. Pursuant to the Policies insuring agreement, Scottsdale agrees to

> pay on behalf of the insured all sums in excess of the 'retention' which do not exceed the applicable limit of liability and which the insured shall become legally obligated to pay as money 'damages' because of a 'wrongful act' to which this policy applies committed by the insured … but only if the 'wrongful act,' or the first in a series of continuous, repeated or 'interrelated wrongful acts':
>
> 1. arises solely out of or in connection with the provision of covered 'financial services' for the 'client' of a named insured or 'representative;'

---

[8] *See,* a true and correct copy of Winn's' September 17, 2010 letter to the Oklahoma Department of Insurance, attached hereto as Exhibit "5."

[9] *See,* a true and correct copy of Wilbanks' October 19, 2010 letter to the Oklahoma Department of Insurance, attached hereto as Exhibit "6."

[10] *See*, applicable language from certified copies of the 2010 and 2011 Policies, attached as Exhibit "7" and Exhibit "8".

        2.    occurs during the 'coverage period' for the insured; and

        3.    results in a 'written claim' which is first made against the insured and presented to us during the insured's 'policy period ….[11]

19.    "Wrongful act" is defined as "any negligent breach of duty, error, misstatement, misrepresentation, omission, 'publication injury' or other negligent act done or attempted by an insured … in conjunction with the provision of covered 'financial services' as set forth in the Limitation of Coverage Endorsement, for the 'client' of the named insured …."[12]

20.    "Financial Services" is defined as "… the proposed sale or sale of products authorized to be sold by a properly licensed 'life insurance agent' including, without limitation, life, health, disability and accident insurance products and annuities …"[13]

21.    "Life Insurance Agent" is defined as "an 'individual' or 'entity' who/which is licensed, as required by law, to sell life, health, disability and accident insurance and annuity products and who/which is selling or providing advise with respect to such products which, if required to be authorized or approved for sale by a regulatory authority, have been so authorized or approved …"[14]

22.    "Client" is defined as "an 'individual' or 'entity' which is a member of the general public and which, as the direct or ultimate consumer, uses the 'financial services' of a named insured 'entity' or 'representative.'"[15]

23.    "Written claim" is defined as "a written notice or demand, including 'suit,' signed by or on behalf of a 'client' of a named insured … who is alleged to have

---

[11] *See,* applicable language in Exhibit 7 and Exhibit 8 at form BFX-P-60a (12-07) at p. 4.
[12] *See,* applicable language in Exhibit 7 and Exhibit 8 at form BFX-P-60a (12-07) at p. 4.
[13] *See,* applicable language in Exhibit 7 and Exhibit 8 at form BFX-P-60a (12-07) at p. 2.
[14] *See,* applicable language in Exhibit 7 and Exhibit 8 at form BFX-P-60a (12-07) at p. 3.

suffered monetary loss as a result of or in conjunction with the provision of 'financial services' by a named insured … and asserting that the insured is liable for said monetary loss."

24. "Coverage period" is defined as "the period of time beginning with the applicable 'retroactive date' for that insured, as stated in this policy, and ending with the expiration of that insured's 'policy period.'"[16]

25. The Policies are also subject to several exclusions, including Exclusion O, pursuant to which coverage is not available for "claims arising out of any actual or alleged 'wrongful act' … committed by or involving an insured and occurring … prior to the effective date of coverage for said insured under this policy … if the insured knew or should have known, by consulting his/her/its records or otherwise, that said 'wrongful act' was likely to result in a claim …."[17]

26. Exclusion O also provides that coverage is not available for "claims arising out of any actual or alleged 'wrongful act' … arising out of or involving the same or similar circumstances, acts, errors or omissions as any claim or 'suit' against an insured, or other litigation which occurred or was pending prior to the effective date of coverage for the insured under this policy …."[18]

27. The Policies also include the Claims Exclusion Endorsement, which states "there is no coverage under this policy … for any claim arising out of or related in any way to … (2) any incident or fact situation which occurred prior to the effective date of this policy, which is known to an insured, and may reasonably be expected to result in a claim or 'suit' against an insured."[19]

---

[15] *See,* applicable language in Exhibit 7 and Exhibit 8 at form BFX-P-60a (12-07) at p. 1.
[16] *See,* applicable language in Exhibit 7 and Exhibit 8 at form BFX-P-60a (12-07) at p. 1.
[17] *See,* applicable language in Exhibit 7 and Exhibit 8 at form BFX-P-60a (12-07) at p. 8.
[18] *See,* applicable language in Exhibit 7 and Exhibit 8 at form BFX-P-60a (12-07) at p. 8.
[19] *See,* applicable language in Exhibit 7 and Exhibit 8 at form FNX-m17 (12-07).

28. In addition, the Claims Exclusion Endorsement provides that "there is no coverage under this policy … for any claim arising out of or related in any way to … the same or similar circumstances, acts, errors, or omissions as any complaint, claim, or 'suit' against an insured … or other litigation, whether or not identified in the 'Application' or any attachments or supplements thereto, which occurred or was pending prior to the effective date of this policy, including, without limitation, the purchase, sale or advice regarding the same 'security' or other investment product involved in that complaint, claim or 'suit.'"[20]

29. The Policies also include various Conditions, including Paragraph B – Duties In The Event Of An Error, Omission, Claim Or Suit, which states that:

> As soon as an insured knows of an alleged 'wrongful act' which may result in a 'written claim' covered by this policy, the insured must give us written notice as soon as practicable of the details of the 'wrongful act,' including the circumstances giving rise to the 'wrongful act,' a description of the services provided or that should have been provided, the name and address of any potential claimant and the type and amount of injury suffered by said claimant. Include as many details as possible. If a 'written claim' is made or 'suit' is brought against an insured, the insured, as a condition precedent to our obligations under this policy, must immediately send us every demand, notice, summons or other process relating to said claim or 'suit', provided, except as provided in Section II A. 3. or Section VII K, in no event shall such 'written claim' or 'suit' be accepted by us later than the last day of the insured's policy period.

## DECLARATORY RELIEF

30. Scottsdale adopts and incorporates by reference the allegations set forth in the preceding paragraphs above as though completely and fully set forth herein.

---

[20] *See,* applicable language in Exhibit 7 and Exhibit 8 at form FNX-m17 (12-07).

31. There is an actual, present and existing controversy between Scottsdale and the Defendants regarding Scottsdale's obligations under the Policies in connection with the Underlying Lawsuit.

32. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201-2202, Scottsdale seeks a judicial declaration of its rights and duties under the Policies. The Court's declaration will confer certainty on the parties and serve the interests of justice.

33. No coverage is afforded under the 2010 Policy for the claims asserted by Winn in the Underlying Lawsuits to the extent that any "claim" first made during the applicable Policy period was not reported to Scottsdale during that Policy period.

34. No coverage is afforded under the 2011 Policy for the claims asserted by Winn in the Underlying Lawsuits to the extent that a "claim" was not first made during the applicable Policy period.

35. No coverage is afforded under the Policies for the claims asserted by Winn in the Underlying Lawsuits based on the application of Exclusion O.

36. No coverage is afforded under the Policies for the claims asserted by Winn in the Underlying Lawsuit based on the application of the Claims Exclusion Endorsement.

35. No coverage is afforded under the Policies for the claims asserted by Winn in the Underlying Lawsuit based on the breach of the Paragraph B of the Policy Conditions – Duties In The Event Of An Error, Omission, Claim Or Suit.

37. In addition to the foregoing provisions, Scottsdale pleads all other conditions, terms, warranties, limitations, definitions and exclusions of the Policies, which also may be found to be applicable as Scottsdale's investigation of this matter continues, and reserves the right to amend its Complaint as additional and/or more specific information becomes available.

WHEREFORE, Scottsdale respectfully requests that this Court enter a judgment declaring the rights and obligations of the parties under the Policy, including, but not limited to, the following: (a) that the Policies do not afford insurance coverage in connection with the claims asserted by Winn in the Underlying Lawsuit; (b) that Scottsdale has no obligation to defend Wilbanks Securities, Inc. in the Underlying Lawsuit; (c) that Scottsdale has no duty to make any indemnity payment to any party in connection with the with the claims asserted by Winn in the Underlying Lawsuit; and (d) for all such other and further relief as equity and the justice of the cause may require and permit.

Respectfully submitted,

Brently C. Olsson, OBA #12807
HELMS & GREENE, LLC
1900 NW Expressway, Suite #430
Oklahoma City, OK  73118
(405) 607-4100    (405) 607-4447   FAX
bolsson@helmsgreene.com
lstout@helmsgreene.com

BY:    /s/ Brently C. Olsson

**ATTORNEYS FOR PLAINTIFF
SCOTTSDALE INSURANCE COMPANY**

**OF COUNSEL:**

Jay R. Sever (Bar #23935)
365 Canal Street
Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
Email: severj@phelps.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13 day of December, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

    /s/ Brently C. Olsson_____